## Case No. 18,276.

CHARGE TO GRAND JURY—TREASON.

[2 Wall. Jr. 134; 4 Am. Law J (N. S.) 83; 5 Pa. Law J. R. 55; 9 West. Law J. 163.]

Circuit Court, E. D. Pennsylvania. Sept. 29, 1851.

TREASON AGAINST THE UNITED STATES — WHAT CONSTITUTES—INDICTMENT—PROOFS BEFORE GRAND JURY.

[1. The expressions "levying war" and "adhering to their enemies, giving them aid and comfort," in the constitutional definition of treason, were borrowed from the ancient law of England, and are to be understood in the sense which they bore in England when the constitution was adopted.]

[2. The expression "levying war" embraces not merely the act of formal or declared war, but any combination forcibly to prevent or oppose the execution or enforcement of a provision of the constitution or of a public statute, if accompanied or followed by an act of forcible opposition in pursuance of such combination.]

[3. Direct proof of the combining may be found in declared purposes of the individual party before the actual outbreak, or it may be derived from proceedings of meetings in which he took part openly, or which he either prompted or made effective by his countenance or sanction, commending, counseling, or instigating forcible resistance to the law.]

[4. Direct proof of the purpose, however, is not legally necessary; the concert of purpose may be deduced from the concerted action itself, or it may be inferred from facts occurring at the time, or before or afterwards.]

[5. To complete the crime of treason, there must be some act of violence as the result or consequence of the combining. But it is not necessary to prove that the person accused was a direct personal actor in the violence. If he was present, directing, aiding, abetting, counselling, or countenancing it, or if, though absent at the time of its actual perpetration, he yet directed the act, or devised or knowingly furnished the means for carrying it into effect, and instigated others thereto, he is guilty of the crime. Successfully to instigate treason is to commit it.]

[6. The constitutional provision that "no person shall be convicted of treason, unless on the testimony

of two witnesses to the same overt act, or on confession in open court" (article 3, § 3), applies, it seems, only to the proofs on the trial, and not to a preliminary hearing before a committing magistrate, or the proceedings before a grand jury.]

[7. Treason against the United States may be committed by any one residing or sojourning within its territory and under the protection of its laws, whether he be a citizen or an alien.]

On the 18th of September, 1850 [9 Stat. 462], congress, in order to give effect to a provision of the constitution, passed a law to enable the owners of fugitive slaves to recover them when found in the states to which they had fled. Slavery, the abolition of slavery, this law, or any law for the recovery of slaves, had been for some time prior to the passage of the act, the themes of passionate and fanatical debate by extreme factions in the Northern and Southern states. The country was convulsed by party rage, and that "unity of government which constitutes us one people," had itself become endangered. Not content with resisting the passage of the act, the northern part of the faction, immediately after its passage, set themselves to work through the pulpits, the press, through public harangues and secret engines of every kind, to bring about resistance to the law, and to destroy the power of executing it through the force of public opposition. In this circuit, everywhere, owing to the energy of this court, and of the commissioners and officers appointed by it to execute the provisions of the act, the law was generally enforced with integrity. "As the Lord liveth, and as my soul liveth,"—declared Mr. Justice Grier, just after its passage, and in the midst of an assemblage whose murmurs of violence were disturbing his administration of justice, —"this court will administer this law in its full meaning and genuine spirit till the last hour that it remains on the statute book." In one of the interior counties, however, it was successfully resisted. Mr. Edward Gorsuch, a citizen of Maryland, who had come to Christiana, in Lancaster county, Pennsylvania, to reclaim his slaves, was met by a body of armed men, assaulted, beaten and murdered. His son who was with him, was at the same time, beaten, robbed and stabbed, and his life endangered. An officer of the United States was driven back by menaces and violence while proclaiming his character and exhibiting his warrant. The time and the manner of these outrages, their asserted object, the denunciations by which they were preceded and the concerted action of the persons, evinced, it was thought, a combined purpose forcibly to resist the statute. And it was stated that for some time before this, gatherings of people had been held from time to time at West-Chester, a town near the place of the outbreak, at which denunciations of the law were made as unconstitutional and of no obligation against "the higher law of every man's conscience:" the judges of the United States who would enforce it denounced as Scroggses and Jefferieses, and exhortations made and pledges given to defy its execution to the last. The murder of Mr. Gorsuch, under such circumstances, caused a deep feeling throughout the whole country; and it being stated to the court that several bills of indictment for treason against the United States would be laid before the grand jury, that body was thus charged on the law of treason, by

KANE, District Judge. Treason against the United States is defined by the constitution (article 3, § 3, cl. 1) to consist in "levying war against them, or in adhering to their enemies, giving them aid and comfort." This definition is borrowed from the ancient law of England (St. 25 Edw. III., St. 5, c. 2), and its terms must be understood of course in the sense which they bore in that law, and which obtained here when the constitution was

adopted. The expression "levying war," so regarded, embraces not merely that act of formal or declared war, but any combination forcibly to prevent or oppose the execution or enforcement of a provision of the constitution or of a public statute, if accompanied or followed by an act of forcible opposition in pursuance of such combination. This in substance has been the interpretation given to these words by the English judges, and it has been uniformly and fully recognised and adopted in the courts of the United States. See Foster, Hale, and Hawkins, and the opinions of Iredell, Paterson, Chase, Marshall, and Washington, JJ., of the supreme court, and of Paterson, C. J., in U. S. v. Mitchell [Case No. 15,788]; U. S. v. Fries [Id. 15,170]; U. S. v. Bollman [4 Cranch (8 U. S.) 75], and U. S. v. Burr [Id. 14,692a].

The definition, as you will observe, includes two particulars, both of them indispensable elements of the offence. There must have been a combination or conspiring together to oppose the law by force, and some actual force must have been exerted; or the crime of treason is not consummated. The highest, or at least the direct proof of the combining may be found in the declared purposes of the individual party before the actual outbreak; or it may be derived from the proceedings of meeting, in which he took part openly, or which he either prompted, or made effective by his countenance or sanction,—commending, counselling or instigating forcible resistance, to the law. I speak, of course, of a conspiring to resist a law, not the more limited purpose to violate it, or to prevent its application and enforcement in a particular case, or against a particular individual. The combination must be directed against the law itself. But such a direct proof of this element of the offence is not legally necessary to establish its existence. The concert of purpose may be deduced from the concerted action itself, or it may be inferred from facts concurring at the time, or afterwards, as well as before. Beside this, there must be some act of violence, as the result or consequence of the combining. But here again, it is not necessary to prove that the individual accused, was a direct, personal actor in the violence. If he was present, directing, aiding, abetting, counselling, or countenancing it, he is in law guilty of the forcible act. Nor is even his personal presence indispensable. Though he be absent at the time of its actual perpetration, yet if he directed the act, devised or knowingly furnished the means, for carrying it into effect, instigating others to perform it, he shares their guilt. In treason there are no accessories. There has been, I fear, an erroneous impression on this subject among a portion of our people. If it has been thought safe, to counsel and instigate others to acts of forcible oppugnation to the provisions of a statute,—to inflame the minds of the ignorant, by appeals to passion, and denunciations of the law as oppressive, unjust, revolting to the conscience, and not binding on the actions of men,—to represent the constitution of the land as a compact of iniquity, which it were meritorious to violate or subvert,—the mistake has been a grievous one; and they who have fallen into it may rejoice, if their appeals and their counsels have been hitherto without effect. The supremacy of the constitution, in all its provisions, is at the very basis of our existence as a nation. He, whose conscience, or whose theories of political or individual right forbid him to support and maintain it in its integrity, may relieve himself from the duties of citizenship, by divesting himself of its rights. But while he remains within our borders, he is to remember, that successfully to instigate treason, is to commit it.

It is declared in the article of the constitution which I have already cited, that "no person shall be convicted of treason, unless on

the testimony of two witnesses to the same overt act, or cn confession in open court." This and the corresponding language in the act of congress of April 30, 1790 [1 Stat. 112], seems to refer to the proofs on the trial, and not to the preliminary hearing before the committing magistrate, or the proceeding before the grand inquest. There can be no conviction until after arraignment on bill found. The previous action in the case is not a trial, and cannot convict, whatever be the evidence or the number of witnesses. I understand this to have been the opinion entertained by Chief Justice Marshall [Case No. 14,692a], and though it differs from that expressed by Judge Iredell, on the indictment of Fries [Id. 15,170], I feel authorized to recommend it to you, as within the terms of the constitution, and involving no injustice to the accused.

I have only to add, that treason against the United States may be committed by any one resident or sojourning within its territory and under the protection of its laws, whether he be a citizen or alien. 1 Hale, P. C. 59, 60, 62; 1 Hawk. P. C. c. 2, § 5; W. Kel. 38.[1]

[5. The constitutional power to regulate commerce, and to pass all laws necessary to carry that power into effect, vests in congress the right, not merely to preserve and protect commerce, but to foster, strengthen, and extend it; and this authority is sufficient to sustain the validity of the legislation whereby congress has declared certain acts committed upon the high seas to be piracy, and punishable as such, even if those acts do not strictly constitute the crime of piracy as known to international law. Act 1790, c. 9, §§ 8, 9 (1 Stat. 113); Act 1820, c. 113, § 3 (3 Stat. 600); Act 1847, c. 51 (9 Stat. 175).]

[1] This charge was delivered in the absence of GRIER, Circuit Justice. On a subsequent occasion, however, he referred to it as containing a correct statement of the decisions on the subject, and he expressed his full concurrence in the doctrines and sentiments which it expressed.

